# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60515

United States Court of Appeals
Fifth Circuit
**FILED**
June 13, 2016
Lyle W. Cayce
Clerk

LAVAN YANKTON, SR.,

   Plaintiff - Appellant

v.

CHRISTOPHER EPPS; EMMITT SPARKMAN; EARNEST LEE; FAYE NOEL; REGINALD STEWARD; CAPTAIN PORTER; CAPTAIN SIMON; MS. STURDIVANT, Case Worker; LIEUTENANT THIGPEN; LIEUTENANT ROACH; TOWNSON, Correctional Officer; ROY, Correctional Officer (FO); BLACK, Correctional Officer (Little); YOUNG, Correctional Officer (CO); JOHNSON, (CO); MARSHAL, (CO); WALKER, (CO); HENPHILL, Correctional Officer (CO); JANE DOE, (CO); JOHN DOE, (CO); JANE DOE 2, (CO); JAQWANNA ROBINSON, Case Worker,

   Defendants - Appellees

Appeals from the United States District Court
for the Northern District of Mississippi
USDC No. 4:14-CV-34

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

FACTS & PROCEEDINGS

Plaintiff-Appellant LaVan Yankton, Sr., a Native American inmate at the Mississippi Department of Corrections ("MDOC"), brought this action against Defendants-Appellees, various MDOC officials, challenging a policy limiting the length of inmates' hair as violative of his rights under the First Amendment. Yankton, who is an Oglala Sioux, alleges that the restriction interferes with his religious beliefs, which forbid him from cutting his hair. Yankton further alleges that, in March of 2013, after he refused to cut his hair himself, prison officials pinned him down and forcibly cut it for him.

That December, Yankton filed a grievance under the MDOC's Administrative Remedy Program ("ARP"). (This was his second grievance regarding the policy; he had filed his first several years earlier in 2011.) In January of 2014, MDOC's Legal Claims Adjudicator ("Adjudicator") rejected this second grievance as untimely because it had been submitted more than 30 days after prison officials had cut Yankton's hair the previous March.

Yankton attempted to "appeal" the rejection of the second grievance by filing a third the following month. The Adjudicator determined that this third grievance was repetitive of the second and informed Yankton that "since this matter has already been rejected, this particular request is being returned to you and will not be processed."

Yankton then filed a complaint, and later an amended complaint, in the district court asserting claims under 42 U.S.C. § 1983. The magistrate judge held a *Spears* hearing[1] to focus those claims.[2] Following that hearing, Yankton moved to stay the action pending exhaustion of his administrative remedies.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds*, *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

[2] The minute entry for the *Spears* hearing indicates that there was an audio recording; however, that recording is not included in the record on appeal. Yankton

2

The district court determined that, in so moving, Yankton had conceded that he had not yet exhausted his remedies and dismissed his claims.[3] Yankton then moved for reconsideration, explaining that his grievance was timely because it concerned the policy limiting the length of inmates' hair, not the incident that occurred as a result of the policy. He also explained that he had previously exhausted his administrative remedies by filing his first grievance regarding the policy in 2011. Unlike the second and third grievances, MDOC had accepted that first grievance into the ARP and resolved it on the merits, noting that "there are no exceptions to the three inch limit for hair" because "[i]f offenders were allowed exceptions to this rule, the risk that head lice and other things could be spread through the building would be greatly increased." Before the district court decided whether to reconsider dismissing Yankton's claims, he appealed.

Several months later, the district court denied Yankton's request that it reconsider its dismissal of his claims. In so doing, it did not explicitly address Yankton's assertion that he had exhausted his administrative remedies through his first grievance under the ARP. Yankton again appealed.

LAW & ANALYSIS

We review *de novo* the district court's dismissal of Yankton's claims for failing to exhaust his administrative remedies.[4] The Prisoner Litigation

---

requested a transcript from the hearing, but the district court denied the request. Yankton does not challenge this denial.

[3] The district court dismissed Yankton's complaint *sua sponte* because it was apparent from the face of the pleadings that Yankton had failed to exhaust his administrative remedies. The district court relied on Yankton's motion to stay for its conclusion on exhaustion, but Yankton also conceded that he had failed to satisfy the exhaustion requirements in his amended complaint. The MDOC officials asserted failure to exhaust as an affirmative defense in their answer.

[4] *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999).

Reform Act ("PLRA") requires that a prisoner exhaust all such remedies before brining claims under § 1983.[5] We ordinarily take "a strict approach" to this requirement.[6] Under this strict approach, proper exhaustion of those remedies requires more than "mere 'substantial compliance'" with them.[7] "Proper exhaustion demands compliance with . . . deadlines and other critical procedural rules."[8]

Yankton must, therefore, comply with the ARP, through which MDOC conducts its formal two-step process for handling inmate grievances.[9] "[T]o ensure their right to use the formal [ARP]," inmates "must make their request to the Adjudicator in writing within a 30 day period after an incident has occurred."[10] They are, however, discouraged from making repetitive requests and "are encouraged to continue to seek solutions to their concerns through informal means."[11]

Prior to the "first step" of this procedure, the Adjudicator screens the request to determine whether it meets specified criteria.[12] If a request fails to

---

[5] *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Gonzalez v. Seal*, 702 F.3d 785, 787-88 (5th Cir. 2012).

[6] *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), *overruled by implication on other grounds by Jones v. Bock*, 549 U.S. 199, 216 (2007).

[7] *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

[8] *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

[9] *See Wilson v. Epps,* 776 F.3d 296, 300 n.2 (5th Cir. 2015); *see also* Miss. Code § 47-5-801, *et seq*.

[10] *See* Inmate Handbook, MDOC, ch. VIII*,* sec. IV, *available at http://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf* (last modified Aug. 6, 2015 1:59:49 PM).

[11] *See id.*

[12] *See id.* at ch. VIII*,* sec. V.

meet that criteria, the Adjudicator will reject it and notify the inmate via Form ARP-1.[13] If the request meets the criteria, however, the Adjudicator will accept it into the ARP, and the request will then proceed to the first step. At the first step, the appropriate MDOC official receives the request via Form ARP-1[14] and provides a "first-step response" to the request via Form ARP-2. If the inmate is satisfied with this first-step response, he does not need to do anything further. If unsatisfied, however, the inmate may then proceed to the "second step" by indicating as much on the same Form ARP-2. At the second step, another appropriate MDOC official, such as a warden, provides the "second-step response" via Form ARP-3. If unsatisfied with the second-step response, the inmate may then bring a claim in court.[15] As discussed above, Yankton's first grievance in 2011 made it through both the first and second steps, but his second and third grievances did not make it beyond the initial screening.

Yankton asserts that the district court erroneously dismissed his claims for failure to exhaust administrative remedies. He contends, in particular, that he exhausted those remedies by submitting the first grievance in 2011 and by submitting the second and third grievances in 2013 and 2014, respectively. In so doing, he relies on our opinion in *Johnson v. Johnson*.[16]

In *Johnson*, we considered whether an inmate had sufficiently exhausted his administrative remedies to allow his claims under § 1983 against prison officials who had failed to protect him from near-constant assaults by other

---

[13] *See id.* at ch. VIII, sec. VI.

[14] Form ARP-1 states: "This request comes to you from the Adjudicator. See the attached request from the offender. Please return your response to [the Adjudicator] within 30 days of this date."

[15] *See* Inmate Handbook, MDOC, ch. VIII, sec. IV.

[16] 385 F.3d 503 (5th Cir. 2004).

inmates.[17] There, the prison's two-step grievance process required inmates to submit a request within 15 days of each incident.[18] We rejected the notion that, under those circumstances, the inmate was required to submit a new request after each incident or even every 15 days.[19]

In so doing, we held that "prisoners need not continue to file grievances about the *same issue*."[20] A single request was "sufficient to exhaust claims that arose from the same *continuing* [*condition or policy*]," and therefore additional requests were not necessary to remind prison officials that the underlying condition or policy remained in existence.[21] We did not, however, hold "that a grievance [about] one *particular incident* automatically exhausts claims that arise from future incidents of the *same general type*."[22] In considering this distinction, we summarized another court's observation that, "when inmates have filed a grievance regarding a prison *policy*, they need not file grievances regarding subsequent *incidents* in which the policy is applied."[23]

Unlike in *Johnson*, the MDOC did not reject Yankton's second and third grievances because they were repetitive of the first grievance. Rather, it rejected the second request because Yankton failed to file it within 30 days of

---

[17] *Id.* at 512. We noted that, according to the plaintiff's allegations, the assaults there occurred "virtually every day." *Id.* at 521.

[18] *Id.* at 515.

[19] *Id.* at 519-21.

[20] *Id.* at 521 (emphasis added).

[21] *Id.* (emphasis added). In *Johnson*, the continuing condition was the prison officials' "failure to protect [the inmate]." *Id.*

[22] *Id.* at 521 n.13 (emphasis added).

[23] *Id.* at 521 (emphasis added) (citing *Aiello v. Litscher*, 104 F. Supp. 2d 1068, 1074 (W.D. Wis. 2000)).

the incident during which his hair was cut, and it rejected his third request "appealing" that rejection as repetitive of the second.

Each of Yankton's grievances, however, appears to concern the continuing policy itself, not the incidents that occurred as a result of that policy.[24] For instance, Yankton's requests stated that he sought "a religious exception to the hair grooming policy" and that "[t]he policy must be change[d] in the SOP to show a religious exception on a case by case basis." They also explained that a prison official "told [him] once again that if he did not cut his hair that [the officials] would cut it by force" and that he "ha[d] been told this for years."

Notably, MDOC expressly permits inmates to file a grievance under the ARP with regard to any "policy within an institution/facility" *and/or* "incident occurring within an institution/facility."[25] To require an inmate's grievance regarding a policy to allege an *incident* occurring as a result of that *policy* would render these multiple bases meaningless.

Yankton timely filed each of his requests challenging the policy limiting the length of inmates' hair while that policy was in effect. Although the Adjudicator properly accepted his first request in 2011, the Adjudicator improperly rejected Yankton's second request in 2013 as untimely, and the

---

[24] The district court stated: "Yankton's claims arise out of allegations that Mississippi Department of Corrections ("MDOC") officials will not permit him to grow his hair longer than three inches, the maximum length permitted under MDOC policy. On one occasion, MDOC officials pinned Yankton down and forcibly cut his hair when he refused because it violates the tenets of his religion. Yankton's religious beliefs forbid him to cut his hair, and he believes that the policy in question infringes upon his religious freedom under the First Amendment to the United States Constitution."

[25] *See* Inmate Handbook, MDOC, ch. VIII, sec. II.

Adjudicator rejected his third request in 2014 "appealing" the rejection of the second request as repetitive.[26]

Because Yankton adhered to the requirements of the ARP, he has properly exhausted his remedies under it.[27] MDOC's failure, not Yankton's, prevented him from proceeding through the first and second steps of the ARP. He had no further recourse after his grievances were rejected. "The PLRA [only] requires exhaustion of 'such administrative remedies as are available,'"[28] and therefore an inmate's "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust'" a claim.[29] By filing the third grievance "appealing" the rejection of the second, Yankton did the only thing he could to object under the ARP. We may "topple over administrative decisions" because the Adjudicator "not only has erred, but has erred against objection made at the time appropriate under its practice."[30] Accordingly, the district court erred in determining that Yankton had failed to exhaust his claims regarding the policy under the ARP.

The district court also erred in dismissing those claims in the manner in which it did. The court explained that, although the failure to exhaust

---

[26] We do not decide whether his second and third requests might have been rejected as repetitive of the first.

[27] Because Yankton's requests relate to the policies, not the particular incidents that occurred as a result of those policies, we do not consider whether any claims concerning those incidents were properly exhausted. Even if such claims existed and were not properly exhausted, they do not preclude the properly exhausted claims from proceeding. *Jones v. Bock*, 549 U.S. 199, 222 (2007) ("A typical PLRA suit with multiple claims, on the other hand, may combine a wide variety of discrete complaints, about interactions with guards, prison conditions, generally applicable rules, and so on, seeking different relief on each claim. There is no reason failure to exhaust on one necessarily affects any other.").

[28] *Id.* at 217 (quoting 42 U.S.C. § 1997e(a)).

[29] *Id.* at 218.

[30] *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).

administrative remedies "is an affirmative defense, normally to be pled by a defendant," it was nonetheless permitted to dismiss a *pro se* prisoner's claims *sua sponte* if that failure was "apparent on the face of the pleadings." It thus decided to dismiss Yankton's claims because such a failure was apparent on the face of his motion to stay.

But, as a preliminary matter, a motion is not a pleading,[31] and a district court may only "dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust [administrative remedies], *if the complaint itself makes clear* that the prisoner failed to exhaust."[32] "Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions."[33]

Yankton's complaint and amended complaint do not make it apparent that he failed to exhaust his administrative remedies. Neither did they need to make it apparent that he had exhausted those remedies.[34] Although the MDOC officials' answer alleged that the affirmative defense precluded Yankton's claims "*if* [he] fail[ed] to comply," Yankton has denied that perfunctory allegation.[35]

---

[31] FED. R. CIV. P. 7 (distinguishing between pleadings, including "a complaint" and "an answer to a complaint," and motions).

[32] *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (emphasis added); *c.f. Gonzalez v. Seal*, 702 F.3d 785, 788 n.1 (5th Cir. 2012) ("We note that our decision only applies in the case where the defendant moves to dismiss for failure to exhaust administrative remedies. The issue of whether the court can raise the exhaustion issue *sua sponte* is not before us.").

[33] *Day v. McDonough*, 547 U.S. 198, 210 (2006).

[34] *Bock*, 549 U.S. at 216 ("[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

[35] "[A]n allegation is considered denied or avoided" when "a responsive pleading is not required." FED. R. CIV. P. 8(b)(6). Because "a reply to an answer" is not required unless the court orders it, FED. R. CIV. P. 7(a), an affirmative defense contained in an answer is automatically denied or avoided.

Yankton's motion to stay, which the district court relied on as "conceding" that Yankton had failed to exhaust his administrative remedies, does nothing of the kind. Instead, it reiterates: "The request from Yankton is not REGARDING the [Rule Violation Reports], but [for] a religious exception to the hair grooming policy. A[n] on-going event without a religious exception. A[n] on-going religious threat without an exception." Rather than conceding that he failed to exhaust his administrative remedies, Yankton's motion reiterates that he did all that the ARP allowed him to do. In fact, it appears that Yankton filed the motion to stay to allow MDOC to fix *its own* mistake by accepting his requests into the ARP and allowing them to proceed to the first and second steps. In suggesting that this outcome is appropriate, Yankton relied on another district court's indication that a stay might allow the prison to remedy its mistake and consider the prisoner's grievance anew. That court had explained: "[I]f the *defendants* wish to file a motion to stay this action to allow the parties to funnel [the plaintiff's] grievance through the second and third stages of the grievance procedure, such a request would deserve consideration."[36] Yankton's motion may not have been clear in what it sought, but it was clear in indicating that he had *not* failed to exhaust his administrative remedies. It was improper for the district court to dismiss Yankton's claims *sua sponte* on the basis of a motion, not the complaints, and without informing Yankton that it intended to do so.

## CONCLUSION

For the forgoing reasons, we REMAND for further proceedings consistent with this opinion.

---

[36] *Ouellette v. Me. State Prison*, No. Civ. 05–139–B–W, 2006 WL 173639, at *4 (D. Me. Jan. 23, 2006) (emphasis added).